1

```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------x
                                          20-CR-306(NGG)
UNITED STATES OF AMERICA,
                                          United States Courthouse
          Plaintiff,                      Brooklyn, New York

          -against-                       September 9, 2020
                                          12:30 p.m.
CHRISTOPHER CHIERCHIO, ET AL.,

          Defendants.

---------------------------------x

       TRANSCRIPT OF CRIMINAL CAUSE FOR STATUS CONFERENCE
            BEFORE THE HONORABLE NICHOLAS G. GARAUFIS
              UNITED STATES SENIOR DISTRICT JUDGE

APPEARANCES

For the Government:       UNITED STATES ATTORNEY'S OFFICE
                          Eastern District of New York
                          271 Cadman Plaza East
                          Brooklyn, New York 11201
                          BY:  LINDSAY K. GERDES, AUSA
                               ANDREY SPEKTOR, AUSA


For Defendant Chierchio: GERALD J. MCMAHON, ESQ.
                          375 Greenwich Street
                          New York, New York 10013


For Defendant Kurland:    MORVILLO ABRAMOWITZ GRAND IASON &
                          ANELLO P.C.
                          565 Fifth Avenue
                          New York, New York 10017
                          BY:  TELEMACHUS P. KASULIS, ESQ.
                               ANDREW D. DILLON, ESQ.

Proceedings recorded by mechanical stenography.  Transcript
produced by computer-aided transcription.
```

*GEORGETTE K. BETTS, RPR, FCRR, CCR*
*Official Court Reporter*

```
 1
 2   APPEARANCES: (Continued)
 3
 4   For Defendant Russo:      LaRUSSO CONWAY & BARTLING LLP
                               300 Old Country Road, Suite 341
 5                             Mineola, New York 11501
                               BY:  JOSEPH CONWAY, ESQ
 6
 7   For Defendant Smookler:   LAW OFFICE OF KEVIN J. KEATING
                               666 Old Country Road
 8                             Garden City, New York 11530
                               BY:  KEVIN J. KEATING, ESQ
 9
10
11
12
13
14
15
16
17
18
19
20   Court Reporter:           Georgette K. Betts, RPR, FCRR, CCR
                               Phone:  (718)804-2777
21                             Fax:    (718)804-2795
                               Email:  Georgetteb25@gmail.com
22
23
24   Proceedings recorded by mechanical stenography.  Transcript
     produced by computer-aided transcription.
25
```

1 THE COURTROOM DEPUTY: Does everyone hear that
2 clicking sound?
3 MR. McMAHON: Yes.
4 THE COURT REPORTER: Yes.
5 THE COURTROOM DEPUTY: Everybody hears it, right?
6 (Background interference.)
7 (Pause in proceedings.)
8 THE COURT: Please call the case.
9 THE COURTROOM DEPUTY: Criminal cause for status
10 conference, 20-CR-306, United States versus Chierchio, et al.
11 Starting with the government, please state your
12 appearances for the record.
13 THE COURT: For the government?
14 MS. GERDES: Hi, Your Honor. Lindsay Gerdes for the
15 United States and Andrey Spektor is on the line.
16 THE COURT: Thank you.
17 Let me call the names of the defendants and then if
18 you're present just say "here" or "present" and then your
19 attorney can make his appearance.
20 Mr. Chierchio.
21 DEFENDANT CHIERCHIO: I'm here.
22 THE COURT: Just wave so I can see where you are.
23 Good afternoon, sir, all right. And counsel.
24 MR. McMAHON: Gerald J. McMahon for Mr. Chierchio.
25 Good afternoon, Your Honor.

1            THE COURT:  Good afternoon, sir.

2            Mr. Kurland.

3            DEFENDANT KURLAND:  I'm here, Your Honor.

4            THE COURT:  Good afternoon, sir.  And your counsel.

5            MR. KASULIS:  Good afternoon, Your Honor.  Tim

6   Kasulis and Dennis Dillion for Mr. Kurland.

7            THE COURT:  I'm sorry, where are you?  Very good.

8   Thank you very much.  Good afternoon.

9            Mr. Russo?  Just wave, Mr. Russo, so I can see you

10  and know you've heard me.  Thank you very much, sir.

11           And counsel for Mr. Russo?

12           MR. CONWAY:  Good afternoon, Your Honor.  This is

13  Joseph Conway.

14           (Audio interference.)

15           THE COURT:  I'm sorry.  Are you on video or audio?

16           MR. CONWAY:  I'm on video, Your Honor.

17           THE COURT:  All right, I can't see you.

18           Then Mr. Smookler.

19           DEFENDANT SMOOKLER:  Yes, here.

20           THE COURT:  Where are you?  Just wave so I can see

21  where you are.  I don't see you.  Okay, thank you, thank you.

22           And counsel for Mr. Smookler.

23           MR. KEATING:  Yes.  Good afternoon, Your Honor.

24  Kevin Keating for Francis Smookler.

25           THE COURT:  Yes.  Good afternoon, gentlemen.

1              All right.  This is the first status conference in
2    this case.  Let me hear from the government on the status of
3    the case from the government's perspective.
4              MS. GERDES:  Yes, Your Honor.  We have reached out
5    to defense counsel to get the best addresses for them to send
6    out discovery.  The first round of discovery went out today,
7    it should be in their hands tomorrow.  It's a voluminous first
8    production.  It includes all of the wiretap calls on this
9    case.  As we outlined in our detention letter, the government
10   had Title 3 authorization on three people's telephones:
11   Mr. Russo, Mr. Smookler and Mr. Chierchio's phone.  We were up
12   on the Russo and Smookler phones for 90 days and
13   Mr. Chierchio's phone for 60 days.
14             There are a tremendous number of calls for the
15   defendants to review.  I, myself, would make a rough estimate
16   it could be as many as 7,000 calls and on average each
17   defendant is speaking for about two hours a day on average
18   during the wiretap period, that would total approximately 480
19   hours of telephone calls.  Also in that first discovery
20   production there were a lot of defendants' bank records
21   returns that we had received back and we are already gathering
22   materials for the second discovery production and that will go
23   out soon.
24             Based on what I just said, this is a case with a
25   voluminous amount of discovery.  In addition, there are

1  approximately 35 pieces of electronic evidence that the
2  government seized in connection with the defendants' arrests.
3  It includes two servers, multiple computers and multiple cell
4  phones.  The FBI is still processing that evidence.  We are
5  going to be asking the Court to designate this case as complex
6  given the amount of discovery that defense counsel is going to
7  have to go through and there are a number of defendants
8  involved in the case and we think a status conference is at
9  the Court's discussion obviously, but it may be a situation
10 where we want to come back in about 60 days to give defense
11 counsel time to start reviewing all of the evidence that will
12 be coming their way.
13            THE COURT:  All right.  Let me hear from the defense
14 counsel.  If you're going to speak, just state your name for
15 the court reporter and I'll take whatever comments you have on
16 what the government just said.
17            Mr. Keating, you look like you're ready to speak,
18 are you ready to speak?
19            MR. KEATING:  Actually, no, Your Honor, I was trying
20 to hear, that's why I came closer.
21            THE COURT:  Okay.  I just thought you were leaning
22 forward and it's especially difficult to sense when someone is
23 waiting to weigh in on a video conference.
24            Is there's someone who would like to comment on the
25 government's presentation?

PROCEEDINGS

1             MR. CONWAY:  Your Honor, this is Joseph Conway on
2    behalf of Frank Russo.
3             THE COURT:  Yes, sir.
4             MR. CONWAY:  I'm in a somewhat different position
5    than the other defendants.  Assuming we're guided where we may
6    have been, what -- despite the government's what generally
7    sounds like to me, is discovery --
8             THE COURT REPORTER:  I can't hear him.
9             MR. CONWAY:  -- at this point having literally no
10   chance to talk to my client about it, on the assumption that
11   he will remain remanded, which we'll argue that hopefully
12   after this status conference, at this point I would ask that I
13   be allowed to enter an opposition to that contingent to
14   speaking to my client and making a decision down the road.
15            THE COURT:  You know, I think you were speaking in
16   terms of the designation of the case as complex I take it; is
17   that right?
18            MR. CONWAY:  That's correct.
19            THE COURT:  Okay.  Well, let me just say this, I
20   think until you've seen the discovery, seen the discovery and
21   discussed it with your client, the assessment on your part of
22   the complexity of the case is premature and I wouldn't agree
23   to consent to the designation, at least at this point, or even
24   contemplate the designation, I will give you a number -- give
25   you 60 days to review the discovery and stay the Speedy Trial

1   clock for those 60 days and then to have a conference where we

2   can figure out where we go from here   It's probably the most

3   efficacious way of dealing with this case going forward until

4   you've seen the discovery and had a chance to look at it,

5   discussed it with your client and then we'll see where we

6   stand.

7              So is there -- then I'll get to some of the

8   applications once we've done that, get to some of the

9   applications that have been made since you appeared before the

10  magistrate judge and then made an appeal to me.

11             Is there any objection to setting a date in about 60

12  days for a status conference and excluding time?

13             MR. CONWAY:  No, Judge, on behalf of Frank Russo I

14  will not object to that.

15             THE COURT:  Okay.  Thank you.  The other defendants,

16  is there any objection just tell me, speak up.  Okay, all

17  right.

18             So what we'll do, I'm going to set a status

19  conference for a date 60 days hence.  Let's set Tuesday -- I'm

20  sorry, Friday, November 13th at 11 a.m. for a status

21  conference.  The time is excluded between today and

22  November 13th in the interest of justice, for review of

23  discovery and consultation between the defendants and their

24  attorneys without objection of any party.  And so we will meet

25  again on November 13th.  If there is a reason to start before

1  then, please feel free to let me know.

2              Is there anything -- there are two applications
3  before the Court.  An application from Mr. McMahon, which I've
4  reviewed and I have consulted with Judge Cogan with regards to
5  having this case transferred to Judge Cogan as related to the
6  case before him involving Mr. Altieri, and I'm considering
7  that.  And I will let you know, Judge Cogan and I have
8  consulted and I'll advise you of our -- my decision and his
9  view on the subject.

10             Generally speaking, when you're seeking to have a
11 case transferred to another judge that's related, it's
12 important under the rules to let us both know, in other words,
13 sending the application to both judges.

14             And, Mr. McMahon, on your behalf, in effect, I've
15 sent your application to Judge Cogan --

16             MR. McMAHON:  Thank you.

17             THE COURT:  -- so he has your application and he has
18 the government's response.

19             MR. McMAHON:  Thank you, Judge.

20             THE COURT:  That's fine.

21             And then there is an application for reconsideration
22 of Mr. Russo's bail, I'll handle it separately.

23             And so what I'd like to do is conclude the status
24 conference on the case and unless there is something other
25 counsel other than Mr. Conway wishes to discuss, generally,

1    about the case.
2              MR. KASULIS:  Sorry to interrupt, Judge.  Tim
3    Kasulis for Mr. Kurland.
4              THE COURT:  Yes, Mr. Kasulis, please.
5              MR. KASULIS:  Thank you, Your Honor.
6              One matter I wanted to raise is we, I imagine, are
7    going to make a motion for severance at some point, I know
8    others may wish to as well.  Would Your Honor like those
9    motions to brief them up before the other pretrial motions or
10   wait until the other pretrial motions are filed?  Whatever you
11   want, Judge, it's obviously your preference.
12             THE COURT:  Why don't we take this up on
13   November 13th once you've had a chance to look at the
14   discovery --
15             MR. KASULIS:  Thank you, Your Honor.
16             THE COURT:  -- then you'll be in a better position
17   to make better arguments or engage in motion practice on that.
18   We won't necessarily have to do all the motions at once but I
19   think that motion we would like to -- we'd want to get it out
20   of the way, so you can have it later.  All right?
21             MR. KASULIS:  Thank you, Your Honor.
22             THE COURT:  Thank you.
23             Anything else from anyone, Mr. McMahon or
24   Mr. Keating?
25             MR. McMAHON:  No, Your Honor.

1        MR. KEATING: No, Your Honor. Thank you.

2        THE COURT: Thank you very much.

3        So, everyone, we're terminating the status

4   conference and I will just ask that Mr. Russo and Mr. Conway

5   to remain on the call along with the government.

6        Thank you, everyone.

7        MR. McMAHON: Thank you, Your Honor.

8        MR. KEATING: Thank you, Your Honor.

9        THE COURT: Although you're welcome to listen.

10       So Mr. Conway.

11       MR. CONWAY: Yes, I'm here, Your Honor.

12       THE COURT: I can't see you. Just wave.

13       MR. CONWAY: I am waving.

14       THE COURT: I don't see you anywhere, I hear you. I

15  know your voice.

16       I have your motion for reconsideration and the

17  government has responded; is that right?

18       MR. CONWAY: Yes.

19       MS. GERDES: That's correct, Your Honor and --

20       THE COURT: And so the motion contains some voice

21  recordings as well as the lengthy application and the

22  government has responded and I'm reviewing your motion papers

23  and response and I will have an answer for you in the very

24  near future.

25       Is there anything more, Mr. Conway, that you want to

1    say about it that isn't already put forward carefully, clearly

2    and extensively in your application?

3               MR. CONWAY:  Your Honor, I appreciate you taking the

4    time and the effort to review this.  I don't have anything

5    that's not contained in my papers, but I just wanted to take

6    one minute just to make it clear because I believe there might

7    be a little disconnect between myself in terms of my argument

8    and it could be our inarticulate ability to tell it, but in

9    context, what you have here is a long-standing business

10   relationship between the three --

11              (Phone disconnected.)

12              THE COURT REPORTER:  Excuse me, Your Honor.  My

13   phone disconnected and I need Mr. Conway to repeat what he

14   stated.

15              MR. CONWAY:  And I'll be brief, Your Honor.

16              THE COURT:  Okay, start again, Mr. Conway.

17              MR. CONWAY:  So basically starting again, Judge, you

18   have two individuals, Russo and Altieri.  Altieri is the

19   alleged fraud victim here that identifies Russo.  They have a

20   long-standing business relationship that dissolves in the

21   early part of 2020.  At that point, the lawyers get involved

22   and Mr. Russo was able to secure a confession of judgment

23   (inaudible).  Based on that relationship, they then have the

24   right to look at Altieri's bank records and they see that

25   there are numerous other victims that Altieri has taken money

1   from.  From that they contact some of the victims and there's

2   a meeting.  Sometime after that meeting in February Altieri is

3   beaten up, he was hit by a wrench and they try to cut off his

4   fingers.  Mr. Russo and Mr. Smookler have nothing to do with

5   that whatsoever.

6              What did Altieri do at that point?  He comes to

7   Russo and he asks for a loan to get them off my back.  That's

8   when Russo spoke and brings a private businessman in who has

9   been previously involved with Altieri in some of these loans,

10  and they give him $250,000.  Everything is good for the first

11  10 days or two weeks when Altieri makes the payments that he's

12  supposed to make, but then he defaults and what you have is a

13  very frustrated Mr. Russo and a very frustrated Mr. Smookler.

14  And they make some telephone calls, which clearly reveal the

15  frustration by telling him, listen, you owe us all this money,

16  you can understand the frustration in the calls (audio

17  interference) and he comes to them again basically to get

18  money to stay alive and he rips them off again.  So there is

19  an initial flurry of calls telling him he has to pay the money

20  back.

21             THE COURT:  I see.

22             MR. CONWAY:  After that, at all times, Judge, the

23  last of the conversations that the government memorialized is

24  not Russo or Smookler making threats, they're telling him what

25  the other people are going to do, in fact as terrifying as the

1  phone call that the government referred to between Russo and
2  Smookler are meant (inaudible), in that phone call Russo tells
3  him to go to the police, get his wife and kids out of there
4  and explains to them, in response to a question from Altieri
5  as to what they're going to do, not Russo and Smookler, the
6  people who already had beaten him up, what they are going to
7  do to him, and that's when you have that terrifying call, they
8  are going to rip the teeth out of your children and rape your
9  wife.  That's not a threat by Mr. Russo, that's explaining to
10 Altieri what the others are going to do to him, the others
11 that have already assaulted him.
12         And there was a series of calls between Alteri and
13 Russo (audio interference) and phone calls, but there was no
14 threat past May 20th because Mr. Russo and Mr. Smookler were
15 business people, they got a confession of judgment through a
16 lawyer.  On May 20th, when they realized through the
17 bankruptcy court that there was no hopes of getting any money
18 back from Altieri, and they filed in the bankruptcy court, and
19 they stopped calling him.  So there is no threat, never one --
20 (background interference) (inaudible) anything about that,
21 nothing, nothing from May 20th.
22         And as far as the other individual, again, Judge,
23 it's completely no context for us, we don't know who he is,
24 why it happened.  Obviously we're dealing (inaudible) and it
25 seems to be a very limited one or two phone calls and then

*GEORGETTE K. BETTS, RPR, FCRR, CCR*
*Official Court Reporter*

1  phone call that the government referred to between Russo and
2  Smookler are meant (inaudible), in that phone call Russo tells
3  him to go to the police, get his wife and kids out of there
4  and explains to them, in response to a question from Altieri
5  as to what they're going to do, not Russo and Smookler, the
6  people who already had beaten him up, what they are going to
7  do to him, and that's when you have that terrifying call, they
8  are going to rip the teeth out of your children and rape your
9  wife.  That's not a threat by Mr. Russo, that's explaining to
10 Altieri what the others are going to do to him, the others
11 that have already assaulted him.
12         And there was a series of calls between Alteri and
13 Russo (audio interference) and phone calls, but there was no
14 threat past May 20th because Mr. Russo and Mr. Smookler were
15 business people, they got a confession of judgment through a
16 lawyer.  On May 20th, when they realized through the
17 bankruptcy court that there was no hopes of getting any money
18 back from Altieri, and they filed in the bankruptcy court, and
19 they stopped calling him.  So there is no threat, never one --
20 (background interference) (inaudible) anything about that,
21 nothing, nothing from May 20th.
22         And as far as the other individual, again, Judge,
23 it's completely no context for us, we don't know who he is,
24 why it happened.  Obviously we're dealing (inaudible) and it
25 seems to be a very limited one or two phone calls and then

1    stopped --

2            THE COURT:  All right.  Thank you.

3            MR. CONWAY:  -- Mr. Russo is not anybody who is
4    going to assault or take any action.

5            THE COURT:  All right.  Thank you.

6            Mr. Conway, are you aware that your client has made
7    in a claim against in a bankruptcy proceeding involving
8    Mr. Altieri for $70 million?

9            Hello?

10           (Video dropped.)

11           THE COURT:  Mr. Conway?  We lost him.  I'm sorry,
12   Mr. Conway, are you there?

13           MR. CONWAY:  Yes, I can hear you.  Can you hear me?

14           THE COURT:  I just asked you, it's my understanding
15   that there's a bankruptcy proceeding involving Mr. Altieri and
16   that your client has claimed $70 million from that proceeding,
17   are you aware of that?

18           MR. CONWAY:  I'm aware of that, Judge.  The company
19   that Mr. Russo and Mr. Smookler have called James Dean MML,
20   through legal counsel, has made a claim in the bankruptcy
21   court to that money.

22           THE COURT:  I see.  Okay.

23           Is there anything the government would like to say
24   very briefly before we adjourn and I take the application on
25   the submission?

1    MS. GERDES:  Yes, Your Honor, the only thing I would
2    add is in response to the letter that Mr. Conway submitted
3    yesterday, the response to that is, I'll say in number one he
4    says there are 30 incoming calls from Mr. Altieri to Mr. Russo
5    during that time period.  I would point out to the Court that
6    there 110 outgoing calls from Mr. Russo to Mr. Altieri during
7    that time period.  And then what I would also point out to the
8    Court is that basically for every time Mr. Altieri calls
9    Mr. Russo, that's preceded by Mr. Russo calling Mr. Altieri.
10   So if you look at those phone records you'll be able to see
11   the amount of times that there are outgoing calls.  And that's
12   it, we'll rest on our papers.
13       THE COURT:  Well, thank you everyone.  And at this
14   point I'll take the application, submission and we're
15   adjourned for the day.  Have a nice day.
16       MS. GERDES:  Thank you, Your Honor.
17       MR. CONWAY:  Thank you, Your Honor.
18       (Matter concluded.)
19
20              *    *    *    *    *
21
22   I certify that the foregoing is a correct transcript from the
     record of proceedings in the above-entitled matter.
23
24   s/ Georgette K. Betts                January 26, 2021
25   GEORGETTE K. BETTS                   DATE

*GEORGETTE K. BETTS, RPR, FCRR, CCR*
*Official Court Reporter*